OPINION
{¶ 1} Appellant William S. Davis appeals a judgment of the Stark County Common Pleas Court convicting him of receiving stolen property (R.C. 2913.51 (A)):
 {¶ 2} "I. THE CONVICTION OF THE APPELLANT, WILLIAM DAVIS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS INSUFFICIENT TO SUSTAIN HIS CONVICTION AS A MATTER OF LAW.
 {¶ 3} "II. THE DEFENDANT-APPELLANT WAS DENIED HIS FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS OF LAW WHEN HE WAS CONVICTED OF RECEIVING STOLEN PROPERTY, TOTALLY DEVOID OF RELEVANT EVIDENCE NECESSARY TO SUPPORT THE CONVICTION."
 {¶ 4} At 8:00 a.m. on April 20, 2001, Anthony DiGiroloma went to work as delivery driver for Anheuser-Busch. At the beginning of his work day, he placed his wallet in a Crown-Royal bag and placed it under the front seat of his truck. At about 5:00 p.m., he went to retrieve the items from the truck and discovered that they were missing.
 {¶ 5} At about 4:00 p.m. on April 20, appellant entered the In and Out Mart, a convenience store, in Canton, Ohio. Hassan Almudhardi waited on appellant in the store. Appellant told Almudhardi that he need $300 in cash, and presented a debit/credit card bearing the name "Maria DiGiroloma" to the clerk. Almudhardi took the card, which appellant had removed from a Crown-Royal bag, and ran it through the store's credit card machine. After printing the receipt, he noticed that the name on the card was a woman's name. Almudhardi told a fellow employee in the store, Brian Hmeidian, what had transpired, as he needed to leave the store.
 {¶ 6} Appellant told Hmeidan that Maria DiGiroloma was his girlfriend, and she was right outside. Hmeidan took the card, and told appellant to bring his girlfriend inside the store. When appellant returned, he did not have his purported girlfriend, but rather had his photo identification card. Hmeidan took the identification card and asked appellant a few more questions, suggesting that appellant should get his girlfriend on the phone.
 {¶ 7} When Hmeidan figured out that appellant could not telephone his girlfriend, Hmeidan picked up the telephone to call the police. Appellant tried to get the card back, and asked Hmeidan not to do this to him. He then ran out of the store. Hmeidan followed appellant on foot for approximately fifteen minutes, keeping his cell phone in his hand. Appellant kept yelling at Hmeidan, "Don't send me back," and "Don't do this to me."
 {¶ 8} Hmeidan returned to the store. Canton Police Michael Talkington arrived and took a report. At about the same time, Maria DiGiroloma reported that her debit/credit card was stolen. When Canton Police contacted the store, they discovered that appellant had left a photo identification card there. Police put together a photo array including appellant's photo. Both Almudhardi and Hmeidan picked appellant out of the array as the suspect.
 {¶ 9} Appellant was charged with receiving stolen property. The case proceeded to jury trial in the Stark County Common Pleas Court. After the first trial, the jury could not reach a unanimous verdict. The case proceeded to a second jury trial.
 {¶ 10} At the second trial, appellant testified that he found a debit card lying on the ground in his way into the In and Out Mart. He claimed he was entering the Mart on April 20 to cash his pay check from the temporary service for which he worked. He claimed that the service paid him daily for temp work; however, records from his employer showed he had not been paid since April 3, 2001. Appellant claimed he went into the store and handed the card to the clerk, asking who owned the card. Appellant testified that he forgot his identification card, and left the store to get the card. He claimed that when he returned later, he had an altercation with Hmeidan, whom appellant claimed had a grudge against him. He claimed that Hmeidan refused to cash his check and kept appellant's photo identification card.
 {¶ 11} On cross examination, appellant admitted that he had recently served a thirteen year prison term for aggravated robbery, and while serving that term, was found to have committed parole violations on two separate occasions.
 {¶ 12} Appellant was convicted as charged. He was sentenced to a determinate term of eleven months incarceration.
 I {¶ 13} Appellant first argues that the judgment is against the manifest weight and sufficiency of the evidence, as there is no proof of an underlying theft offense, and no proof that appellant had reason to believe the card was stolen.
 {¶ 14} Sufficiency is a term of art meaning the legal standard applied to determine whether the case must go to a jury. State v.Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52. When reviewing a claim of sufficiency of the evidence, we must determine whether, as a matter of law, the evidence produced at trial is adequate to support the conviction. Id.
 {¶ 15} When a defendant makes a manifest weight of the evidence claim, an appellate court sits as thirteenth juror, and decides whether the jury lost its way in weighing the evidence. Id. In reviewing a manifest weight of the evidence claim, a reviewing court should exercise its discretionary power to grant a new trial only in the exceptional case in which the evidence weighs heavily against conviction. Id.
 {¶ 16} To find appellant guilty of receiving stolen property, the jurors had to find that appellant received, retained, or disposed of the property of another, knowing or having reasonable cause to believe the property had been obtained through the commission of a theft offense. R.C. 2913.51 (A). A theft offense includes "theft", which involves knowingly obtaining control over the property of another without that person's consent. R.C. 2913.02 (A)(1).
 {¶ 17} In the instant case, sufficient evidence was presented to allow a jury to conclude that appellant possessed the card knowing or having reason to believe it was stolen. Anthony DiGiroloma testified that he placed his wallet, containing the debit card, in a Crown-Royal bag, and placed it under the seat of his truck when he began his work day. At the end of his work day, the items were missing. He testified that prior to discovering the items were missing, he had not had them outside of his vehicle. Tr. 145. While appellant argues that there is no evidence that the card was stolen, and could have fallen out of the truck or been kicked out of the truck, from this evidence the jury may infer that someone took the card from the truck.
 {¶ 18} Further, contrary to appellant's testimony he found the card laying on the ground, the store clerk testified that appellant had the card in a Crown-Royal bag. Appellant told the clerk the card belonged to his girlfriend, and that his girlfriend was waiting outside. When Hmeidan began to question appellant's story, he asked appellant not to do this to him, and fled the store. From appellant's attempt to lie about the origin of the card, and flight upon being confronted, the jury could conclude that he had reason to believe the card was stolen.
 {¶ 19} In addition, by possession of the credit card, which appellant knew he did not have authority to possess, coupled with his attempt to draw $300 on the card while claiming it belonged to his girlfriend, appellant committed the underlying theft offense necessary for the "knowledge" element of the crime of receiving stolen property. The evidence was sufficient to support the verdict.
 {¶ 20} Further, the judgment is not against the manifest weight of the evidence. The only exculpatory evidence presented was appellant's testimony that he happened to find the card in the parking lot, and Hmeidan set him up by lying about appellant's attempts to simply turn in the lost card. However, the evidence reflects that Almudhardi ran the card through a credit card machine prior to appellant's confrontation with Hmeidan. While appellant claimed that he came to the store to cash his paycheck, which he received daily, there was evidence that he had not been paid since April 3, 2001. The judgment is not against the manifest weight of the evidence, and the state of the evidence does not warrant reversal.
 {¶ 21} The first assignment of error is overruled.
 II {¶ 22} Appellant's second assignment of error alleges that his conviction violates his right to due process of law, as the record lacks any evidence that he knew or should have known the card he possessed was stolen. This is essentially a sufficiency of the evidence claim. As set forth in response to appellant's first assignment of error, sufficient evidence was presented by the State to allow the jury to convict appellant of receiving stolen property.
 {¶ 23} The second assignment of error is overruled.
 {¶ 24} The judgment of the Stark County Common Pleas Court is affirmed.
By Gwin, P.J., Wise, J., and Edwards, J., concur separately.
topic: receiving stolen property — manifest weight